UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

L.K., by his parents, S.K. and J.W.,

                         Plaintiffs-Appellants,          1:26-CV-00195

        - against -                        **COMPLAINT**

New York City Department of Education,

                         Defendant-Appellee.

-----------------------------------------------------------------

Plaintiffs, by their attorneys, Mayerson, Muré & Hobbs, as and for their Complaint, allege and state the following:

1.      Plaintiff L.K., born on April 6, 2008, is properly classified under autism.  To the extent that autism is a "spectrum" disorder, L.K. is considered severe on that spectrum.  L.K. has apraxia of speech, communicates with an augmentative communication device, and has a history of aggression, self-injury and interfering behaviors. L.K. also presents with significant challenges concerning his "activities of daily living." While defendant has never assessed or even considered the issue of L.K.'s need for supplemental home and community based services, defendant has acknowledged the obvious; that L.K. "requires a great deal of support."

2.      L.K.'s history of evaluations and progress reports confirm that he needs intensive one-to-one teaching and behavioral support in order to learn and that he is not able to learn in a group setting that does not provide L.K. with the one to one support that L.K. needs. According to L.K.'s most recent neuropsychological evaluation report, L.K. also requires the continuation of a home-based program to ensure appropriate progress with minimizing maladaptive behaviors and increasing communication and reciprocity, safety awareness, and daily living skills. Ex. P-E.

3.        Plaintiffs S.K. and J.W. are L.K.'s parents.

4.        This action and appeal focuses on L.K.'s 2024-2025 school year and represents the second time that L.K. and his parents have had to prosecute an appeal to the federal court to sustain supplemental home and community based supports that L.K. needs, in addition to his MCC school program. See L.K. v. New York City Dep't. of Educ., 2016 WL 899321 (S.D.N.Y March 1, 2016), *aff'd in part and remanded in part*, 674 Fed. App'x 100 (2d Cir. January 19, 2017)("…nevertheless, the question still remains as to what home and community services L.K. requires in order to receive a FAPE going forward").

5.        Eight years later, the salient question framed by the Second Circuit remains unanswered and unaddressed by defendant in the IEP process for the 2024-2025 school year. As alleged below, during the IEP process for the 2024-2025 school year, as untimely as it was, defendant never bothered to address or assess whether and to what extent L.K. needs supplemental services in order to receive a FAPE. Even worse, upon information and belief, defendant's failure to address this salient question was deliberate and intentional, and pursuant to defendant's impermissible and then undisclosed *policy* of not giving consideration to *any* supplemental home and community based services, regardless of a student's need for such services. Faced with defendant's impermissible and grossly inequitable policies and predeterminations, L.K. didn't stand a chance and had every reason to pursue a private unilateral program and school placement.

6.        As alleged below, the Impartial Hearing Officer ("IHO") and State Review Officer correctly ruled that defendant, having failed to call a single witness, had failed to meet its burden under Prong I to show that it had offered L.K. a FAPE. The IHO and SRO also correctly ruled that plaintiffs had met their burden under Prong II to show that L.K.'s unilateral program

(consisting of L.K.'s unilateral school placement and supplemental services) *was* appropriate and beneficial for L.K. However, as the record will show, the IHO and SRO erred by invoking but misapplying Prong III equitable principles to arbitrarily deny *any* reimbursement relief for *any* of L.K.'s home and community based services.

7.    The IHO and SRO ruled that L.K.'s unilateral program of home and community based services went beyond what FAPE requires, yet made no effort to ascertain where FAPE would begin. This is not a situation where the IHO or SRO scaled back service hours or hourly rates shown to be excessive or unreasonable. There was no such showing here. Despite the fact that the equities amply supported plaintiffs' claims, the IHO and SRO took a reckless chainsaw approach to eliminate *all* of L.K.'s home and community based supplemental services.  In essence, the IHO and SRO threw out the baby with the bathwater.

8.    The IHO and SRO went too far. Plaintiffs won Prongs I and II fair and square. Particularly in view of defendant's policies institutionalizing defendant's predeterminations, the Prong III equities demonstrably support plaintiffs, not defendant. Hence, plaintiffs' appeal.

**The Salient History**

9.    Since 2013, L.K. has attended the not-for-profit Manhattan Childrens Center ("MCC"), together with a program of supplemental home and community based services.  As L.K.'s witnesses made clear, L.K.'s progress is attributable to his highly individualized program (L.K.'s attendance and one to one supports at MCC plus his supplemental home and community based services). Ex. P-AA, para. 45; Ex. P-BB, para. 29; Ex. P-CC, para. 43-49; Ex. P-DD, para. 27-28, 36-39; Ex. EE, para. 25-27.

10.    L.K.'s deficits span all developmental areas, including cognition, academics, communication, social-emotional development, sensory processing, motor skills, executive

functioning, social skills, activities of daily living skills, and self-help skills. Ex. P-CC para. 15; Ex. P-EE, para. 10. L.K. is highly distractible, and engages in interfering behaviors that further detract from his ability to learn. Ex. P-BB, para. 20; Ex. P-EE, para. 10.

11.     L.K. also has self-injurious behaviors (e.g. biting and hitting himself), aggression towards others, self-stimulatory behaviors, sensory seeking behaviors (e.g. mouthing objects and spitting), and no safety awareness. He needs constant supervision to ensure he does not wander off or hurt himself. Ex. P-BB, para. 20; P-CC, para. 16;

12.     L.K struggles with balance, coordination, and motor planning. With fine motor skills, he struggles to navigate his AAC device and carry out all activities of daily living skills. His level of independence is extremely limited. He needs adult assistance to maintain his hygiene and use the bathroom. Ex. P-CC, para. 16; Ex. P-EE, para. 10; P-FF, para. 11-13.

13.     L.K. has notable deficits with speech and language development. He presents with severe motor planning disorder that significantly impacts his ability to produce age appropriate intelligible speech production. As such, L.K. requires supplemental speech therapy by a therapist that specializes in Prompts for Restructuring Oral Muscular Phonetic Targets ("PROMPT"). His supplemental Speech and Language Therapy is provided by therapists that specialize in PROMPT. Ex. P-DD, para. 5, 14-15.

14.     L.K. was at all relevant times, and still is, a student within the purview of defendant New York City Department of Education ("DOE"), entitled to all rights, entitlements, and procedural safeguards mandated by applicable law, statutes and consent orders including, but not limited to, the Individuals with Disabilities Education Improvement Act (hereinafter "IDEIA"), 20 U.S.C. § 1400 *et. seq.*, the pertinent implementing regulations promulgated under the Code of

Federal Regulations, Article 89 of the New York State Education Law, and Part 200 of the Commissioner's Regulations.

15.     Plaintiffs are residents of the State of New York, residing at all relevant times at an address within the New York City Department of Education's purview and currently residing at an address within the Southern District of New York, in the Borough of Manhattan.

16.     Although well known to defendant, plaintiffs are not expressly named and identified herein by their given names or specific residential address because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g), and 34 C.F.R. § 99.

17.     Defendant, the New York City Department of Education ("the DOE"), is a "local educational agency" and school district organized under the laws of the State of New York. Both procedurally and substantively, defendant was and still is statutorily obligated under the IDEIA, as well as the laws of the State of New York and controlling Second Circuit precedent, to consider the "full continuum" to provide L.K. with a "free appropriate public education" ("FAPE") that is "reasonably calculated" in accordance with L.K.'s unique needs.

18.     L.K. has, for years, been approved for a 12 month program.  For students like L.K. who are approved for a 12 month program, the school year starts on July 1 and ends on June 30. For this reason, it is imperative for the DOE start the IEP process in sufficient time so that it can be completed before the start of the next school year.

19.     Each and every school year, the DOE is statutorily obligated to assess and identify L.K.'s unique needs by examining and identifying L.K.'s "present levels of performance." In the same manner as x-rays, MRI's and other assessments are undertaken to inform the path of any surgeon's work before surgery takes place, the process of identifying the student's "present

levels of performance" is a threshold, foundational matter that must precede the development of IEP goals and objectives, as well as the recommendation for a school placement and special education program.

20.     Once a student's "present levels of performance" are assessed and measured, the defendant DOE is obligated to consider the "full continuum." The "full continuum" to be given due consideration includes programming and services available in a school setting, as well as in the student's home and surrounding community. The IDEA statute does not mandate "one size fits all" school placements. This helps to explain why the Second Circuit ruled back in 2017 that an important question going forward would be "what home and community based services L.K. requires in order to receive a FAPE."

21.     The DOE studiously avoided, if not evaded, that critical inquiry and, upon information and belief, the reason the DOE did not bother to address that question is because, while undisclosed to L.K.'s parents, the DOE follows a policy of never considering supplemental, home and community based services, no matter how badly a student might need them.  The DOE's policy of not even considering a student's need for supplemental services is shameful, and goes to the heart of the court's Prong III analysis on the respective equities.

22.     A school district fails to give due consideration to the full continuum when the program it offers a student is limited or otherwise arbitrarily controlled in advance by policy or other impermissible predetermination.  Upon information and belief, defendant follows *multiple* predetermined and grossly inequitable policies that precluded it from offering L.K. a FAPE and the "full continuum." These same inflexible and inequitable policies precluded the DOE from even considering the salient question framed by the Second Circuit as to the supplemental services that L.K. needs in order to receive a FAPE.

23.    This action presents a limited IDEA-based appeal seeking relief from so much of the State Review Officer's (SRO's) December 19, 2025 Decision to the extent that the SRO affirmed the IHO's earlier ruling denying *any* reimbursement relief for *any* of L.K.'s home and community based services. In order to preserve the educational status quo, plaintiffs continue to invoke L.K.'s otherwise automatic and unconditional pendency entitlements. Plaintiffs also seek an award of attorneys' fees pursuant to the fee-shifting provisions of the IDEA statute.

24.    Plaintiffs do not take any appeal from the SRO's Decision to the extent that it did nothing to disturb the Impartial Hearing Officer's (IHO) award of tuition reimbursement for L.K.'s attendance at the not-for-profit Manhattan Childrens Center (MCC). Nor do plaintiffs appeal from the IHO's and SRO core Prong I and Prong II findings in plaintiffs' favor. Plaintiffs' appeal in this action is limited to the relief *refused* by the IHO and the SRO on Prong III (equities) grounds; to wit, the IHO's and SRO's refusal to continue to fund *any* of L.K.'s supplemental home and community-based services.

25.    Pursuant to 20 U.S.C. § 1415(i)(2)(A), 28 U.S.C. §1331 and §1367, this Court has jurisdiction of this action without regard to the amount in controversy.

26.    Venue is proper in that plaintiffs and defendant all reside or are situated within this judicial district.

**Defendant's Untimely IEP Offer For The 2024-2025 School Year Was "Fixed"**

27.    On April 8, 2024, plaintiffs entered into an enrollment contract with MCC for the then upcoming 2024-2025 school year. Ex. P-I. However, L.K. was not locked in at MCC for the 2024-2025 school year because the MCC contract expressly gave plaintiffs the right to cancel the contract without further liability if plaintiffs wished to accept a program and placement offered

by defendant. Ex. P-FF, para. 33. On this record, defendant never gave plaintiffs reason to cancel the MCC contract.

28.    In an email to defendant dated June 5, 2024, plaintiffs gave notice that they had not received any information regarding a meeting for the upcoming 2024-2025 school year and that L.K.'s then current IEP would soon expire. Ex. P-D.

29.    On June 14, 2024, plaintiffs sent defendant a further notice advising defendant that due to the absence of an appropriate and timely program and placement, plaintiffs would seek reimbursement from defendant for the cost of L.K.'s tuition at MCC, as well as the cost of L.K.'s home and community based services. Ex. P-C.

30.    On June 24 2024, *prior* to scheduling any IEP meeting or developing an IEP, defendant sent plaintiffs a "prior written notice" and school location letter. Ex. D-4.

31.    L.K.'s parents visited the school on July 8, 2024 and had concerns that it would not be supportive enough for L.K. Ex. P-F; P-FF, para. 17.

32.    On July 8, 2024, after the 2024-2025 school year had already started, defendant notified plaintiffs that a meeting had been scheduled for July 10, 2024, i.e. two days later. Prior to the meeting, L.K.'s parents and school team shared his most recent reports and evaluations. Ex. P-E; P-FF, para. 19. At the July 10 meeting, defendant recommended a 6:1+1 special class together with certain related services. L.K.'s parents and school team expressed concerns with the recommendation and explained that L.K. needed to continue to receive his after-school services. Ex. P-F. Defendant's IEP recommendation was made by defendant without defendant observing or otherwise assessing L.K. in school or in one of his supplemental services, and without defendant addressing the question of what home and community based services L.K. needed in order to receive a FAPE.

33.     Defendant's IEP (Ex. D-1), at page 64, included an "other options considered" section that confirms that defendant failed to give any consideration to L.K.'s need for a one to one teaching program, or L.K.'s need for supplemental home and community based services. Although undisclosed to plaintiffs, defendant was apparently following its policy not to give any such consideration.

34.     Defendant did not consider the full continuum and was late to boot.  Defendant offered L.K. a special education classroom consisting of six students and one special education teacher, offering L.K. what defendant *had* as opposed to the one to one teaching program that L.K. needed in order to learn.

35.     On July 23, 2024, plaintiffs emailed defendant to communicate plaintiffs' disagreement with defendant's IEP plan, and to confirm that plaintiffs would be looking to defendant to fund the cost of the tuition at MCC, the cost of L.K.'s home and community based services, and L.K.'s transportation costs. Ex. P-F.

36.     On August 23, 2024, L.K.'s parents received a second School Location Letter. L.K.'s parents toured the school and were informed that the school did not have space for L.K. Ex. P-H; P-FF, para. 24-26.

37.     By due process complaint dated July 1, 2024, and an amended due process complaint dated October 10, 2024, plaintiffs alleged that defendant denied L.K. a FAPE for 2024-2025. Plaintiffs' claims included defendant's untimeliness and assessment failures, and defendant's impermissible predetermination. Ex. P-A, P-B.

38.     As and for relief, plaintiffs requested funding for tuition and costs at MCC, five 45-minute sessions per week of PROMPT speech language therapy, two 60 minute sessions of

occupational therapy, intensive home and community based ABA with supervision, and transportation costs.

39.    Plaintiffs invoked pendency based on L.K.'s last agreed IEP dated March 20-2013, together with the SRO's decision in SRO Appeal No. 14-071, for the MCC tuition, together with supplemental services. Ex. P-B. On July 9, 2024, defendant agreed to implement plaintiffs' requested pendency.

40.    Plaintiffs later requested updated pendency pursuant to a prior unappealed IHO decision dated August 6, 2024, including the MCC tuition and the cost of L.K.'s supplemental services. Ex. P-A. On November 13, 2024, defendant agreed with plaintiffs' requested pendency.

41.    The underlying hearing involved three days of proceedings.  In this connection, defendant failed to call a single witness to support defendant's IEP program, or to challenge the appropriateness of plaintiffs' unilateral program.

42.    The IHO properly resolved the Prong I FAPE issue in plaintiffs' favor.

43.    The IHO properly resolved Prong II (the appropriateness of L.K.'s unilateral program) in plaintiffs' favor.

44.    The IHO properly awarded plaintiffs reimbursement for the MCC tuition.

45.    Addressing equitable considerations (Prong III), the IHO ruled that any home-based services, while "beneficial," were "beyond the district's obligations" and "exceeded what would be required for the provision of FAPE."  The IHO made such rulings without analyzing where FAPE would begin for L.K.  Similarly, the IHO made such rulings without meaningfully addressing the salient question posed by the Second Circuit in its 2017 Decision.

46.    Despite plaintiffs' course of dealing in paying L.K.'s service providers for years against their submitted invoices, and plaintiffs' assumption of the obligation to pay L.K.'s

providers, the IHO erroneously ruled that there was "no contractual obligation" on plaintiffs' part.

47.      Defendant did not take an appeal from any aspect of the IHO's decision.

48.      Plaintiffs appealed from the IHO Decision to the extent that the IHO refused to award reimbursement relief for *any* of L.K.'s supplemental home and community based services.

49.      On plaintiffs' appeal to the State Review Office (SRO), struggling mightily to validate the IHO's Decision, the SRO invoked defendant's untimely and otherwise defective IEP and, in particular, the "extensive list of strategies" set forth at pages 31-33 of that IEP. In actuality, defendant's "extensive list of strategies" was just that (i.e. a list), and, as written, was not capable of being performed in defendant's offered 6:1:1 placement.

50.      The IHO and the SRO made no reference to the compelling fact that L.K.'s assessments and the testimony provided by L.K.'s witnesses (i.e. highly trained individuals actually working with L.K.) supported L.K.'s need for an award that included supplemental home and community based services. Ex. P-E; P-S; P-T; P-U; P-AA, para. 45; Ex. P-BB, para. 29; Ex. P-CC, para. 43-49; Ex. P-DD, para. 36-39; Ex. EE, para. 25-27. The IHO and SRO conveniently ignored that compelling evidence, as well as the fact that the defendant failed to call a single rebuttal witness.

51.       The IHO and SRO sought to wrap their rulings under the flag of Prong III equitable circumstances, but then failed to properly consider those circumstances.

52.      The Supreme Court long ago ruled that courts fashioning equitable relief under IDEA must consider "all relevant factors." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 16 (1993). Prong III factors to consider include: whether parents cooperated with the CSE (sending reports, attending and participating in meetings), whether the parent timely notified the district of

their intent to place child in private school, whether the parent visited the DOE's placement, whether the parent intended to genuinely consider a proposed public placement or whether they would have kept their child in private school regardless, and whether parents or the DOE unreasonably delayed anything, and the appropriateness of the DOE's conduct. L.K., 2016 WL 899321, at *17 (quoting G.B. v. N.Y.C. Dep't of Educ., 145 F. Supp. 3d 230 (S.D.N.Y. Nov. 5, 2015)). The Second Circuit has also ruled that these factors include whether the withdrawal of the student from public school was justified. E.M. v. New York City Dep't. of Educ., 758 F.3d 442, 461 (2d Cir. 2014). Here, plaintiffs' rejection of defendant's public school program was justified by defendant's acts and omissions, including but not limited to defendant's untimely and inadequate IEP, its failure to consider the "full continuum" and defendant's rigid policies and predeterminations.

53.    Plaintiffs urge that the IHO and SRO employed an unfair, one-sided, and erroneous review of the Prong III equities, and then abused any discretion they might have had to scale back hourly rates or service hours to completely obliterate *all* of L.K.'s home and community based services.

**Plaintiffs' Entitlement To Counsel Fees**

54.    While plaintiffs seek additional financial relief related to the cost of L.K.'s supplemental services, plaintiffs are already "prevailing" parties under the IDEA statute entitled to an award of attorneys' fees by reason of the fact that plaintiffs won reimbursement for the MCC school tuition.

55.    Accordingly, plaintiffs seek:

(a)    partial reversal of the SRO's Decision;

(b)     a finding that plaintiffs were justified in pursuing a private unilateral program for L.K. and that, looking at all the relevant factors, the Prong III equities sufficiently support plaintiffs' claims and do not preclude reimbursement for the cost of L.K..'s supplemental services;

(c)     an order granting reimbursement for L.K..'s supplemental home and community-based services and supports;

(d)     an order granting plaintiffs leave, as prevailing parties, to file a motion for costs and fees pursuant to the fee-shifting provisions of the IDEIA; and

(e)     an order directing defendant to continue funding L.K.'s pendency entitlements until there is a final adjudication of plaintiffs' claims and the appeal process.

Dated: January 9, 2026
New York, New York

*s/ Gary S. Mayerson*
Gary S. Mayerson (GSM 8413)
Mayerson, Muré & Hobbs
*Attorneys for Plaintiffs-Appellants*
200 West 41st Street, 17th Floor
New York, New York
(212) 265-7200
www.mayerslaw.com